Minute Order Form (06/97)

556

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7822 | **DATE** | 8/27/2001 |
| **CASE TITLE** | ARLINE WHITE SMITH vs. ALLSTATE INSURANCE CORP., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Smith's motion to strike the affidavit of Lynn Murphy [26-1] is granted. Allstate's motions to strike ¶¶ 11-17 of Smith's affidavit, and to strike portions of Smith's Rule 56.1 response as to ¶¶ 8, 20 and 43 [30-1] are granted. Allstate's motion to strike portions of Smith's Rule 56.1 statement of additional facts [30-1] is denied. Allstate's motion for summary judgment [17-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 29 2001 | |
| | Notified counsel by telephone. | | date docketed | 36 |
| | Docketing to mail notices. | | IS | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | 8/27/2001 | |
| SB | courtroom deputy's initials | 01 AUG 28 PM 4:37 | date mailed notice | |
| | | Date/time received in central Clerk's Office | CB mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
AUG 2 9 2001

| | |
|---|---|
| ARLINE WHITE SMITH ) | |
| Plaintiff, ) | |
| ) | No. 00 C 7822 |
| v. ) | |
| ) | Suzanne B. Conlon, Judge |
| ALLSTATE INSURANCE CORP., ) | |
| ET AL. ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Arline White Smith sues Allstate Insurance Corp. ("Allstate"), Samuel Tornabene and Paul Huber individually and as agents of Allstate for discrimination based on race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count I & III), violation of her right to make and enforce a contract under 42 U.S.C. § 1981 (Count II), violation of the Age Discrimination in Employment Act, 26 U.S.C. § 12101 ("AEDA") (Count IV), and violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA") (Count V). Smith also brings a claim of retaliation (Count VI) under the AEDA and Title VII.

Smith alleges three incidents of discrimination and retaliation: (1) her transfer from an evaluation consultant position to a staff claim analyst position on August 1, 1999; (2) her failure to be promoted to a front-line performer ("FLP") position that was awarded to Martin Naughton on August 1, 1999; and (3) her failure to be promoted to the FLP position that was awarded to Brendan Hannan on December 1, 1999. Allstate moves for summary judgment on all counts. The parties have also filed cross-motions to strike.



# BACKGROUND

## I. The parties

All facts are undisputed unless otherwise noted. Smith, an African-American female, was born on April 1, 1951. She has been employed by Allstate since 1973, and has worked in Allstate's Matteson, Illinois claims office since 1993. From 1993 to 1995, she was a casualty unit manager at the Matteson office. From 1995 to 1999, she held the position of evaluation consultant. On August 1, 1999, she was transferred to the position of staff claim analyst.

Allstate is an insurance company with its headquarters in Illinois. Samuel Tornabene is a market claim manager for Allstate. Since March 6, 1996, he has been manager of the Matteson claims office. Paul Huber is claim service manager for the Midwest Region, which currently consists of eight market claim offices in Illinois, Wisconsin, and Minnesota. Both Tornabene and Huber are Smith's supervisors.

## II. Smith's transfer to staff claim analyst

As an evaluation consultant, Smith's duties were to coach the claims adjusters, insure compliance with company procedures and guidelines, and ensure that severities were addressed. Smith worked closely with front line performance experts and leaders. She was asked by management for her input in terms of production for a particular claim report. Evaluation consultants were also included in management meetings. They were generally seen as informal leadership positions within the office.

In the past, the Matteson office had two evaluation consultants. Between May and July 1996, Tornabene added another evaluation consultant – Jack Pieroth – to the Matteson office. At that time, the other two evaluation consultants were Larry Brace and Smith. Both Brace and Pieroth are

2

white males. Tornabene made the decision to add another evaluation consultant because the volume of work at the claims office justified it. A third evaluation consultant was needed only until the pending volume of work decreased. Jim LaBanco, a white male, replaced Brace as the third evaluation consultant in March 1998.

In June 1999, Tornabene met with each of the evaluation consultants to request volunteers to move from an evaluation consultant to a staff claim analyst. None of the evaluation consultants, including Smith, volunteered for the transfer. On June 28, 1999, Tornabene wrote a memo to Huber regarding the need to reduce the number of evaluation consultants from three to two in the Matteson office. In that memo, Tornabene stated LaBanco was the strongest and most effective evaluation consultant. Pieroth was meticulous, worked well with adjusters, and provided value added development. He stated Pieroth was not as flexible and forward thinking as LaBanco. The parties dispute Tornabene's assessment of Smith. Allstate contends Tornabene's memo stated Smith was erratic in her evaluations of claims and displayed a negative attitude towards training. Defendant's Rule 56.1 Statement of Material Facts ("Def. Facts") at ¶ 20. Smith denies this assertion. Plaintiff's Response to Defendant's Rule 56.1 Statement of Material Facts ("Pl. Resp.") at ¶ 20.

Tornabene sought the advice of John Valaitis, the Matteson frontline process specialist for the claim service area. Valaitis agreed with Tornabene that Smith should be transferred. However, Valaitis believed that all three evaluation consultants were doing a satisfactory job, and it was not an easy decision.

Tornabene met with Smith on July 29, 1999 and informed her she was to be transferred to a staff claim analyst position. In 1999, each job title was classified into salary grades that reflected the ranking of the job within the company. In 1999, both positions of evaluation consultant and staff

claim analyst were ranked at 35. At that rank, both positions had the same salary. When Tornabene informed Smith of the decision, he suggested that her diabetes might interfere with her duties as an evaluation consultant. He also suggested that a staff claim analyst position was less stressful than an evaluation consultant. Ultimately, Lynn Chester (the human resources manager), Tornabene, Huber, and Valaitis were all involved in the decision to move Smith out of the evaluation consultant position.

Beginning August 1, 1999, Smith began work as a staff claim analyst and reported to Larry Brace. Smith was moved to a new cubicle 30 to 40 feet from her old one. She continued to use the same type of equipment. Staff claim analysts occasionally had secretarial duties on weekends and evenings if they were on-call. They are responsible for investigating the file, and gathering information concerning liability factors such as medical bills and statements. Evaluation consultants use the staff claim analyst's work product to reach conclusions concerning liability.

### III. Promotion of Martin Naughton and Brendan Hannan

Martin Naughton, a white male in his mid-30s, was promoted from evaluation consultant to FLP on August 1, 1999. The FLP position is a salary grade 37, and is considered a promotion. At the time of his promotion, he had been designated "Ready Now." This designation is used in a succession planning process, the purpose of which is to evaluate individuals for their potential to move into higher levels of responsibility at Allstate. The designations used in the succession planning process are Ready Now, Ready 1-2 years, Ready 3-5 years, and Optimally Placed. Only Tornabene was involved in the decision to promote Naughton.

In December 1999, Brendan Hannan, a white male in his mid-30s, was moved from evaluation consultant to FLP. Smith sought both FLP positions but was denied these promotions.

4

## DISCUSSION

### I. Motion to Strike

As a preliminary matter, the court considers the parties' cross-motions to strike. A motion to strike is disfavored and will only be granted if "the complained of materials are essentially unsupported by the record." *Architectural Iron Workers Local No. 63 Welfare Fund et al. v. United Contractors, Inc.*, 46 F.Supp.2d 769, 770 (N.D. Ill. 1999).

#### A. Affidavit of Lynn Murphy

Smith moves to strike the affidavit of Lynn Murphy. Def. Ex. 12. It is undisputed that Lynn Murphy was not disclosed as an individual having knowledge of any fact relevant to this case by Allstate in its answers to Smith's interrogatories. It is also undisputed that Smith did not depose Murphy. Discovery is closed. Given these circumstances, the court's consideration of Murphy's affidavit would prejudice Smith. *See Scialabba v. Sierra Blanca Condominium Number One Assoc.*, No. 00 C 5344, 2001 WL 803676, at *1 n.1 (N.D. Ill. July 26, 2001). In the alternate, Allstate asks the court to substitute the affidavit of Murphy with that of Iris Chester, who was deposed and whose affidavit contains the same information as Murphy's. However, substitution would prejudice Smith by altering the evidence in this fully briefed motion for summary judgment. Accordingly, Smith's motion to strike the affidavit of Lynn Murphy is granted.

#### B. Smith's Affidavit

Allstate moves to strike portions of Smith's affidavit. Allstate is correct that Smith's affidavit is missing page 4 which contain ¶¶ 11-16. Thus, the court strikes those paragraphs. Allstate also moves to strike ¶ 17, which states "I am aware that Sarah Carter, an adjuster in Lexington, Kentucky committed suicide because of job pressures" for lack of foundation. There is

no basis to infer that Smith had personal knowledge of the reason for Carter's suicide. *Schmidt v. Capanella Sand & Gravel*, No. 00 C 6123, 2001 WL 881322 (N.D. Ill. Aug. 6, 2001); *see also Vllabhapurapu v. First National Bank of Chicago*, 998 F.Supp. 906, 909 n.2 (N.D. Ill. 1998) (affidavit should be stricken when it fails to demonstrate affiant's personal knowledge). The motion to strike ¶¶ 11-17 is granted.

### C. Smith's Rule 56.1 Facts and Responses

Allstate asserts Smith's denial of Allstate's Rule 56.1 statement of material facts in ¶¶ 5, 7, 8, 14, 15, 20, 26, 36, 42, 43, 44, 45, 46, 50, 51, 54, 60, and 61 are not supported by the citations provided, and should be stricken. Allstate further argues that ¶¶ 21, 23, 25, 31, 77, 85, 87, 92, 94, 100, and 129 of Smith's Rule 56.1 statement of additional facts ("Pl. Facts") should be stricken for the same reasons. To the extent these facts and responses are material for purposes of summary judgment, Allstate's motion is addressed below.

## II. Summary Judgment standard.

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome often depends on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

### III. Disability under the ADA

Allstate asserts Smith is not disabled under the ADA. The ADA prohibits disability-based discrimination. *Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 683 (7th Cir. 2000). To establish she is within the ADA's protected class, Smith must show: (1) she suffers from a disability; (2) she was qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) she was subjected to an adverse employment action as a result of her disability. *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir.1999). The ADA defines disability as : (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of that impairment; or (C) being regarded as having that impairment. 42 U.S.C. § 12102(2).

It is undisputed Smith is not disabled, and she does not have a record of any disability. Def. Facts at ¶ 33. Instead, Smith contends Allstate regarded her as having a disability. In support, Smith asserts: (1) when Tornabene informed her she was transferred to staff claim analyst, he inferred her diabetes might interfere with her duties as an evaluation consultant; and (2) Valaitis believed one of the reasons Smith was transferred was due to her "physical problems" and "stress." Pl. Resp. at ¶ 35; Pl. Ex. 23 at 46.

A person is regarded as disabled within the meaning of the ADA if her employer mistakenly

believes the person's actual, nonlimiting impairment substantially limits one or more major life activity. *Murphy v. United Parcel Service*, 527 U.S. 516, 521-22 (1999). An inability to perform a particular job for a particular employer is not sufficient to establish a substantial limitation on the ability to work; "the impairment must substantially limit employment generally." *Byrne v. Board Of Educ., Sch. of West Allis-West Milwaukee*, 979 F.2d 560, 565 (7th Cir.1992). Congress included "being regarded as disabled" within the ADA to protect against erroneous stereotypes that employers hold regarding impairments that are not in fact disabling. *Pilarski v. City of Chicago*, No. 95 C 2006, 1997 WL 83298, at *2 (N.D Ill. Feb. 19, 1997). Essentially, an employee is regarded as disabled if she has an impairment that is not in itself substantially limiting but is viewed as such by the employer. 29 C.F.R. § 1630.2(1). The appropriate inquiry is whether the impairment, as perceived, would affect the employee's ability to find work across the spectrum of the same or similar jobs. *Pilarski*, 1997 WL 83298, at *3.

In *Murphy*, the plaintiff alleged he was regarded as disabled by his employer because he was unable to obtain a certification from the Department of Transportation to drive a commercial vehicle. The court found, at most, the plaintiff was regarded as unable to perform a mechanical job requiring the driving of a motor vehicle. *Murphy*, 527 U.S. at 524. The record contained uncontroverted evidence that the plaintiff could perform other jobs such as diesel mechanic, gas-engine repairer, etc. *Id.* at 524-25. The court concluded the plaintiff was unable to show he was regarded as disabled from a broad range of jobs.

*Murphy* is instructive. The evidence Smith points to – Tornabene's inference about her diabetes and Valaitis' statement about her stress-related problems – only refer to her potential inability to handle the evaluation consultant job. Smith has provided no evidence that Allstate

8

regarded her as unable to perform a wide range of jobs. In fact, Allstate transferred Smith to another position in the same office, thirty to forty feet away from her old cubicle, where she continued to assess insurance claims. *See* 29 C.F.R. §1630.2(j)(3)(ii)(B) (inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working). She used the same equipment as before. As a staff claim analyst, she continued her work in claims analysis by conducting the file investigation used by evaluation consultants. Consequently, Smith cannot demonstrate that Allstate regarded her as disabled.

Even if Smith was regarded as disabled, it is undisputed that Smith never requested a reasonable accommodation. Def. Facts at ¶ 34. Without a request for accommodation, Allstate was not required to accommodate Smith. *Robin v. ESPO Engineering*, 200 F.3d 1081, 1092 (7th Cir. 2000). Summary judgment is granted as to Count V.

## IV. AEDA and Title VII Legal Standards

### A. AEDA Legal Standard

The ADEA makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When an employee alleges age discrimination, an employer is liable only if age actually motivated the employer's decision. *Reeves v. Sanderson Plumbing Products, Inc.*, 520 U.S. 133, 141 (2000). Smith may prove intentional age discrimination through either direct or indirect evidence. *Robin*, 200 F.3d at 1088; *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

In the absence of direct evidence, Smith may use the burden shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d

887, 889 (7th Cir. 1997). First, she must establish a *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802. If successful, the burden of production shifts to Allstate to articulate a legitimate, nondiscriminatory reason for its action. *Id.* If Allstate articulates such a reason, the burden shifts to Smith to prove by a preponderance of the evidence that Allstate's proffered reason was a pretext for discrimination. *Id.* at 804.

In order to establish a *prima facie* case under *McDonnell Douglas*, Smith must prove: (1) that she belonged to a protective class; (2) that she applied for and was qualified for a particular position; (3) that she was subjected to an adverse employment action; and (4) that similarly situated employees were treated more favorably. *Pitasi*, 184 F.3d at 716.

### B.     Title VII Legal Standard

Title VII provides that "[i]t shall be unlawful employment practice for an employer ... (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [and] sex [.]" 42 U.S.C. § 2000e-2(a)(1); *Campbell v. Dominick's Finer Foods, Inc.*, 85 F.Supp.2d 866, 870 (N.D. Ill. 2000). Smith must prove her terms, conditions, or privileges of employment were affected; she must show she suffered a materially adverse employment action. *See Russell v. Bd. of Trs. of Univ. of Ill.*, 243 F.3d 336, 341 (7th Cir. 2001); *Sweeney*, 149 F.3d at 554. The burden shifting analysis of *McDonnell Douglas* is applicable to Title VII.

### C.     Retaliation

Smith may either present direct evidence of retaliation or utilize a burden shifting approach. *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 601 (7th Cir. 2001). If Smith does not have sufficient evidence of direct proof, she can establish a *prima facie* case of retaliation by demonstrating: (1) she

engaged in statutorily protected expression; (2) she suffered an adverse job action; and (3) there is a casual link between the protected expression and the adverse action. *Johnson v. University of Wisconsin*, 70 F.3d 469, 479 (7th Cir. 1995).

## V.     Smith's Transfer to Staff Claim Analyst

### A.     *Prima facie* case

Allstate asserts Smith's transfer to a staff claim analyst position was not a materially adverse employment action. To establish a *prima facie* case for both discrimination and retaliation, Smith must have suffered an adverse employment action. "Determining what is materially adverse will normally depend on the facts of each situation." *Haugerud v. Amery School District*, No. 00-1911, 2001 WL 869361, at *7 (7th Cir. Aug. 2, 2001) (citations omitted). An adverse action is defined broadly, but "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). A material adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.3d 132, 136 (7th Cir. 1993). In assessing adversity, the court may examine both quantitative and qualitative changes in the terms or conditions of employment. *See Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir. 1994). A purely lateral transfer not involving a demotion in form or substance is not a materially adverse employment action. *Williams v. Bristol-Myers Squibb*, 85 F.3d 270, 274 (7th Cir. 1996) "A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either." *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456-57 (7th Cir. 1994); *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132 (7th Cir. 1993).

Allstate asserts Smith's transfer to staff claim analyst: involved no loss in salary or benefits;

11

required her to move from one cubicle to another thirty to forty feet away; and required her to process claims instead of evaluate them. In response, Smith points out Valaitis referred the transfer from evaluation consultant to staff claim analyst as "stepping down"; none of the evaluation consultants volunteered to transfer; evaluation consultants attended management meetings; Smith had to occasionally perform secretarial duties evenings and weekends; and as a staff claim analyst, she reported to Larry Brace whom she had supervised at one point. *Id.* at ¶ 8.

In *Crady*, the court upheld the district court's grant of summary judgment because the plaintiff could not show her transfer from a branch manager position to collections officer was materially adverse. The plaintiff maintained a management level position, received the same salary and benefits, and was unable to show that his responsibilities were significantly reduced. *Crady*, 993 F.2d at 136. Even the plaintiff's loss of his title as assistant vice president was not sufficient to constitute a materially adverse job action. *Id.; see also Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (7th Cir. 1999) (no change in salary, benefits and responsibilities required a finding of no materially adverse job action). In *Collins v. State of Illinois*, 830 F.2d 692, 702 (7th Cir. 1987), the court found an adverse job action where there was no change in salary or benefits. But, in that case, the plaintiff lost her office and was moved to a receptionist desk. She also lost her phone, business cards, and listings in professional directories. *Collins*, 830 F.2d at 704.

*Crady* and *Collins* are instructive. Smith retained the same salary and benefits in the transfer. Her salary grade remained at 35. Unlike *Collins*, there was no change in the size of her work space or the type of equipment that she used. She remained in a non-managerial position. Her work responsibilities may have changed but she has not pointed to any evidence in the record demonstrating a "dramatic downward shift in skill level required to perform job responsibilities."

*Dahm*, 60 F.3d at 257. Nor has she shown Allstate has curtailed any significant prior job responsibilities. It is undisputed that evaluation consultants, like staff claim analysts, are not management positions.[1] Pl. Facts at ¶ 47. She points to no evidence in the record indicating a decline in opportunities for a salary increase or promotion from that position. *See Flaherty*, 31 F.3d at 457.

The reason for the reluctance of the evaluations consultants to voluntary transfer to staff claim analysts is not in the record, and thus provides no assistance in this analysis. Additionally, Smith did not report to Brace in his role as an evaluation consultant. Brace was moved from evaluation consultant to a management position as unit claim manager in 1996. Pl. Facts at ¶ 25. Thus, Brace's supervision of Smith in 1999 sheds no light on whether the transfer was materially adverse. *See also Flaherty*, 31 F.3d at 457 (reporting to former subordinate is insufficient, absent other evidence, to establish materially adverse employment action). Finally, while Smith may not like occasional secretarial duties when on-call, a change in responsibilities must be material. *See also Spring v. Sheboygan Area School District*, 865 F.2d 883 (7th Cir. 1989) (plaintiff's feeling of "public humiliation" was not sufficient to constitute adverse job action). Accordingly, Smith is unable to demonstrate she suffered a materially adverse job action.

### B. Pretext

Smith offers no persuasive evidence to rebut Allstate's legitimate non-discriminatory reason for the transfer. Allstate no longer needed three evaluation consultants in the Matteson office. Allstate selected Smith for the transfer because, comparatively, Smith was the weaker of the three

---

[1]. Smith's record responses to Allstate's facts ¶ 8 fail to support a denial that the evaluation consultant position is not a management position. In addition, Smith admits this fact elsewhere. Pl. Facts at ¶ 47.

evaluation consultants.[2] Smith can make a showing of pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Smith alleges pretext by stating her transfer occurred because she was a "whistleblower" on various Allstate practices regarding settlement of claims. However, this unsupported assertion does not establish discriminatory conduct. Smith refers to her good reviews by Huber and Valaitis in 1996. Pl. Facts at ¶ 29-31. Good reviews three years before she was transferred, which were followed by negative ones, do not support a reasonable inference that Allstate's explanation lacks credibility.

## V.     Failure to Promote

Allstate contends Smith cannot establish a *prima facie* case of discrimination and retaliation because of its failure to promote her. The parties do not dispute Smith is a member of the protected class and suffered an adverse employment action by not receiving the promotions. However, Allstate contends Smith is unable to satisfy the second and fourth prongs of a *prima facie* case.

The court will only consider whether Smith has offered sufficient evidence to satisfy the fourth prong. Analysis of the second prong is unnecessary because the individuals judging her performance — Tornabene and Huber — are the same individuals accused of discriminating against her. *Oest v. Illinois Dept. of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001); *Howell*, 2001 WL 740513, at *5. In the alternate, Allstate asserts Smith cannot demonstrate a pretext for its decision to promote Naughton and not Smith.

---

[2] Smith denies Tornabene's assessment of her work. However, her citations for the denial do not support this conclusion. Pl. Resp. ¶ 20; Pl. Ex. 3,4. Accordingly, Smith's response is treated as an admission.

## A. Similarly situated employees

Smith contends two similarly situated employees – Martin Naughton and Brendan Hannon – were promoted to FLP positions in 1999, and she was not. Naughton and Hannon are white males in their mid-30s, while Smith is an African-American female aged 49. In order to establish a *prima facie* case in a failure to promote case, Smith must demonstrate similarly situated employees were treated more favorably. *Biolchini v. General Electric Co.*, 167 F.3d 1151, 1153 (7th Cir. 1999). This requires a showing that a common supervisor offered one of these employees a position for which Smith was qualified. *Radue v. Kimberly-Clark*, 219 F.3d 612, 618 (7th Cir. 2000). "Different employment decisions, concerning different employees made by different supervisors, are seldom sufficiently comparable to establish a *prima facie* case of discrimination[.]" *Id.*; *Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903, 910 (8th Cir. 1999). In *Radue*, the plaintiff's failure to demonstrate a common supervisor with the similarly situated employees warranted summary judgment. 219 F.23d at 618. The court noted the plaintiff had not even articulated the names of the supervisors who promoted these employees. *Id.*

It is undisputed that Tornabene had no role in promoting Naughton or Hannan to FLP positions. The parties agree that Huber did have a role in promoting Naughton. Pl. Resp. at ¶ 54. However, Smith has provided no evidence to demonstrate Huber had a role in promoting Hannan in the Woodfield office. Pl. Facts at ¶ 56. In fact, the record is devoid of any information on the supervisor who was responsible for promoting Hannan to the FLP position. *See* Pl. Mem. at 10. Thus, Smith fails to show that Hannan is a similarly situated employee.

15

## B. Legitimate Non-discriminatory Reason

The burden shifts to Allstate to establish a legitimate non-discriminatory reason for Naughton's promotion. Huber testified he prefers to promote employees from within an office if a vacancy occurs. Def. Resp. at ¶ 68. Naughton was an evaluation consultant in the Woodfield office, and the FLP position was in Woodfield. Naughton was qualified because he was designated "Ready Now" for a promotion. Def. Facts at ¶ 53. Smith was an evaluation consultant in Matteson, and had no connection to the Woodfield office. She was designated "optimally placed" at that time.[3] Allstate has adequately shown a legitimate non-discriminatory reason for Naughton's promotion.

## C. Pretext

Smith must show this legitimate, non-discriminatory reason is pretextual. The court's inquiry is limited to whether the employer gave an honest explanation of its behavior. *Jackson v. E-J Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1997). For summary judgment purposes, Smith must only "produce evidence from which a rational factfinder could infer that the company lied." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994).

Smith points to Huber's deposition testimony that he sometimes considers candidates from outside the office. Pl. Ex. 15 at 78. While Huber may occasionally consider candidates from outside the office, this fact does not negate his preference for promotion within a particular office. Pl. Ex. 15 at 94. An employer may select the qualifications it considers necessary for a promotion. *See Brill v. Lante Corp.*, 119 F.3d 1266, 1271 (7th Cir.1997) (employer may have a preference for a "quick

---

[3] Smith denies this fact. Pl. Resp. ¶ 43. However, her record citations do not support a denial that Smith was rated optimally placed for 1998 and 1999. To the contrary, Pl. Ex. 3 states that Smith was rated as optimally placed in 1998. Accordingly, Smith's response is treated as an admission.

study" or other criteria so long as nondiscriminatory). The rationale for this rule is that courts do not sit as super-personnel boards. *Id.* at 1272. Smith points to the fact Naughton was replaced with someone outside the Woodfield office. However, Smith fails to assert when this replacement occurred, the reasons for the replacement, or whether Huber was involved in this decision. Without more, the court is hard-pressed to conclude a reasonable jury would find Allstate's reason lacks credibility. Smith has not shown the legitimate reasons offered by Allstate were not its true reasons but were a pretext for discrimination and retaliation.

## VII. Intentional Interference with Contract under 42 U.S.C. §1981

In Count II, Smith alleges Tornabene and Huber violated 42 U.S.C. § 1981 by interfering with her contract with Allstate. Smith contends her transfer to a staff claim analyst position and the failure to promote her violates § 1981. Section 1981 prohibits intentional discrimination on the basis of race or ethnicity in making or enforcing a contract. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). A claim of employment discrimination, such as a failure to promote, is actionable under § 1981. *Vakharia v. Swedish Covenant Hospital*, 190 F.3d 799, 806 (7th Cir. 1999); *Sanghvi v. St. Catherine's Hospital, Inc.*, No. 00-3613, 2001 747599 (7th Cir. July 3, 2001). Smith can proceed by direct proof or utilizing the burden-shifting method. *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993). Section 1981 claims are analyzed under the Title VII *McDonnell-Douglas* burden-shifting approach. *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998); *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 175 (7th Cir. 1996). Smith advances the same three incidents of discrimination and retaliation in her § 1981 claim. For the reasons stated above, these incidents do not establish her claims and summary judgment must be granted on Count II.

## CONCLUSION

Smith's motion to strike the affidavit of Lynn Murphy is granted. Allstate's motion to strike ¶¶ 11-17 of Smith's affidavit is granted. Allstate's motion to strike portions of Smith's Rule 56.1 response is granted as to ¶¶ 8, 20, and 43. The motion is denied in all other respects. Similarly, Allstate's motion to strike portions of Smith's Rule 56.1 statement of additional facts is denied. Allstate's motion for summary judgment is granted.

August 27, 2001

ENTER:

Suzanne B. Conlon
United States District Judge